UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

TERRY MICHAEL COATS,

        Plaintiff,

   v.

SEARS ROEBUCK CO., and Does 1 through 50, inclusive,

        Defendants.

NO. CIV. S-07-1221 FCD EFB

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on a motion for summary judgment brought by defendant Sears Roebuck & Co. ("defendant" or "Sears") pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Terry Michael Coats ("plaintiff" or "Coats") opposes the motion. For the reasons set forth below,[1] defendant's motion for summary judgment is GRANTED.

---

[1] Because oral argument will not be of material assistance, the court orders these matters submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

1

## BACKGROUND[2]

This case arises out of plaintiff's employment with and subsequent termination by defendant Sears. On May 10, 1994, plaintiff filled out an application for employment with Sears (the "application"). (UF ¶ 10.) The application asked, "Within the past seven years, have you been convicted of a crime involving dishonesty or violence?" (UF ¶ 11.) There are clear "yes" and "no" boxes for the applicant to check. (UF ¶ 12.) Under the check the box section, the application further asked, "If yes, explain." (UF ¶ 13.) Plaintiff marked "No" and wrote "288a" in the explanation section. (UF ¶ 14.) Plaintiff was hired on May 25, 1994. (UF ¶ 15.)

In 1992, plaintiff had been arrested and charged with Penal Code § 288(a), lewd and lascivious acts with a child under the age of 14. (UF ¶ 1.) Plaintiff spent approximately two years in jail after his arrest. (UF ¶ 9.) Subsequently, in 1994, he pled guilty to a felony under Penal Code § 288(a) in a plea bargain that released him from jail for time served. (UF ¶ 9.)

In January 2007, Pamela Heising ("Heising"), plaintiff's manager, received a complaint about plaintiff from another employee. (UF ¶ 24.) While investigating the complaint, Heising contacted Sears' Human Resources center for assistance. (UF ¶ 25.) Heising had several conversations with Roberta Proper ("Proper"), Human Resources Consultant, regarding the situation.

---

[2] Unless otherwise noted, the following facts are undisputed. (See Pl.'s Opp'n Stmt. of Undisputed Material Facts ("UF"), filed Nov. 3, 2008). Where the facts are in dispute, the court recounts plaintiff's version of the facts. (See Pl.'s Separate Stmt. ("DF"), filed Nov. 3, 2008).

2

(UF ¶ 26.)  Heising informed Proper that she had learned during her investigation that plaintiff was a convicted sex offender. (UF ¶ 27.)  Proper consulted with Sears' Manager of Human Resource Compliance, Brian Eby ("Eby"), informing him that plaintiff had admitted to Heising that he was a convicted sex offender.  (UF ¶ 30.)  Eby reviewed plaintiff's employment application and determined that plaintiff had been deceptive and misrepresented the truth when he failed to disclose his felony conviction on his application by marking "No" on the conviction question and writing "288a" in the explanation section.  (UF ¶ 32.)  As such, Eby instructed proper to advise Heising to terminate plaintiff's employment.  (UF ¶ 32.)

Sears' employment computer system, PeopleSoft, requires a termination code be assigned to all terminations.  (UF ¶ 33.) "Integrity" is Sears' code for a termination due to deception and misrepresentation.  (UF ¶ 35.)  Eby instructed Proper that plaintiff's termination was to be coded "Integrity" based upon his statements relating to his conviction on the application. (UF ¶ 36.)  On January 24, 2007, Heising informed plaintiff that his employment was being terminate for lying on his application. (UF ¶ 38.)

Plaintiff asserts that he was not convicted of a crime involving dishonesty or violence, and thus, he did not lie on his application.  (DF ¶¶ 12, 14; 20-21.)  Plaintiff also asserts that he listed 288(a) in the explanation section in order to be honest with Sears about his conviction.  (DF ¶ 13.)  Finally, plaintiff asserts that he explained to Jim Borghmeier, the person who hired him, the charge and circumstances surrounding his conviction.

3

(DF ¶ 15.)  As such, plaintiff contends that defendant had no cause to terminate him.

### 1. Employment Status

The application, which plaintiff filled out and signed, provides that "employment and compensation can be terminated with or without cause, and with or without notice, at any time, at the option of either the Company" or the applicant.  (UF ¶ 42.)  The application further provides that "[n]o unit manager or representative of Sears, Roebuck and Co. other than an officer of the company has any authority to enter into any agreement for employment for any specified period of time, or to make an agreement contrary to the foregoing."  (UF ¶ 43.)  Plaintiff understood that the terms written on the application would apply to his employment with Sears.  (UF ¶ 41.)

During his employment with Sears, plaintiff received a copy of the Employee Handbook.  (UF ¶ 45.)  The Employee Handbook provides

> Employment at the Company is considered indefinite and terminable at the will of either the Company or its Associates, with or without notice, and with or without cause at any time.  No Company representative, other than the Senior Vice President of Human Resources, has authority to enter into any agreement for employment for any specified period of time, or to make arrangement to the contrary.

(UF ¶ 45.)  Plaintiff never had a conversation with the Senior Vice President of Human Resources about his employment.  (UF ¶ 47.)  No Sears' Manager ever told plaintiff that he could not be fired from Sears.  (UF ¶ 51.)  Plaintiff does not identify any Sears' employee who told him that he was going to be hired for a certain period of time.  (UF ¶ 48.)  Plaintiff never saw anything

4

1  in writing that promised him his employment was going to last a
2  specific period of time.  (UF ¶ 52.)
3       Rather, plaintiff asserts that defendant's supervisory
4  employees conducted meetings once a week, during which it was
5  implied that plaintiff and other sales associates would only be
6  terminated if they (a) were late for work; (b) failed to meet
7  sales quotas; (c) failed to meet established guidelines for Sears
8  Credit Card applications; and (d) failed to meet established
9  guidelines for extended warranty sales.  (DF ¶ 16.)  Plaintiff
10 asserts that he always met and exceeded these expectations.  (DF
11 ¶ 3.)
12      **2.   The Litigation**
13      On April 19, 2007, plaintiff filed an action in the Superior
14 Court of California for the County of Sacramento, alleging (1)
15 breach of implied contract; (2) breach of the implied covenant of
16 good faith and fair dealing; (3) defamation; (4) wrongful
17 termination in violation of public policy; (5) intentional
18 infliction of emotional distress; and (6) negligent infliction of
19 emotional distress.  (Ex. A to Notice of Removal, filed June 21,
20 2007).  On June 21, 2007, defendant removed the case to this
21 court on the basis of diversity jurisdiction.

**STANDARD**

23      The Federal Rules of Civil Procedure provide for summary
24 judgment where "the pleadings, depositions, answers to
25 interrogatories, and admissions on file, together with the
26 affidavits, if any, show that there is no genuine issue as to any
27 material fact."  Fed. R. Civ. P. 56(c); see California v.
28 Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must

be viewed in the light most favorable to the nonmoving party. See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party only needs to show "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.

Once the moving party has met its burden of proof, the nonmoving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. See Nissan Fire & Marine, 210 F.3d at 1107. Instead, through admissible evidence the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**ANALYSIS**

**A.   Breach of Implied Contract**

Plaintiff claims that during the course of his employment

6

with defendant, there was an implied in fact employment contract, which provided that plaintiff would not be terminated without good cause.  Defendant asserts that plaintiff signed an express contract, which provided that his employment with defendant was at-will and that no conduct could modify that status.  Thus, defendant contends that there was no such implied contract.

### 1.    Express Written Agreement

A clear and unambiguous at-will provision in a written employment contract, signed by the employee, cannot be overcome by evidence of a prior or contemporaneous implied contract requiring good cause for termination.  Dore v. Arnold Worldwide, Inc., 39 Cal. 4th 384, 389 (2006); Guz v. Bechtel Nat's Inc., 24 Cal. 4th 317, 340 n.10 (2000) (noting that most cases applying California law have held that an at will provision in an *express written agreement*, signed by the employee, *cannot* be overcome by proof of an implied contrary understanding).  "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.  The express term is controlling, even if it is not contained in an integrated employment contract."  Tomlinson v. Qualcomm, Inc., 97 Cal. App. 4th 934, 945 (2002) (quoting Camp v. Jeffer, Mangels, Butler & Marmaro, 35 Cal. App. 4th 620, 630 (1995)).  As such, an express at-will agreement precludes the existence of an implied contract requiring good cause for termination.  Id.  Under California law, an employment application completed and signed by an employee that expressly states that employment is terminable at-will qualifies as such an agreement.  See Gianaculus v. Trans World Airlines, Inc., 761 F.2d 1391, 1394 (9th Cir. 1985) (holding that

an employee's claim for breach of an implied contract was precluded where the employee had signed an employment application with an express at-will provision).

In this case, it is undisputed that plaintiff signed an employment application when he was hired by defendant, which unequivocally provided that he was an at-will employee. The application expressly stated that he could be terminated at any time, with or without cause and with or without notice, and that no representative of defendant, other than an officer of the company, could modify the at will provision. Further, defendant's Employee Handbook also provided that employment was considered terminable at the will of the Company, with or without notice and with or without cause, and that No Company representative, other than the Senior Vice President of Human Resources, had the authority to make arrangement to the contrary. It is also undisputed that no express representations were made by any of defendant's representatives, and specifically not the Senior Vice President of Human Resources, that his employment status was anything other than at-will. Therefore, because plaintiff completed and signed an employment application with an express at-will provision and because there was no indication that this agreement was expressly modified by any of defendant's representatives, plaintiff's claim that there was an implied contract is precluded.

**2.   Implied Agreement**

However, even assuming that plaintiff argued that the original employment application or the provisions in the Employee Handbook do not constitute the sole, relevant contracts between

Coats and Sears relating to his employment,[3] plaintiff has failed to raise a triable issue of fact that rebuts the statutory presumption of at-will employment. Under California law, there is a statutory presumption that an employment relationship that has no specified term "may be terminated at the will of either party on notice to the other." Cal. Labor Code § 2922 (2008); Schneider v. TRW, Inc., 938 F.2d 986, 990 (9th Cir. 1991). "An employee may overcome this presumption with evidence of contrary intent." Schneider, 938 F.2d at 990 (citing Foley v. Interactive Data Corp., 47 Cal.3d 654, 677 (1988)). The plaintiff must produce competent evidence of an agreement with his employer that he could not be discharged without good cause. Eisenberg v. Alameda Newspapers, Inc., 74 Cal. App. 4th 1359, 1387 (1999). In evaluating whether there was contrary intent, courts consider the entire relationships of the parties, including the (1) terms of the application for employment; (2) the personnel policies or practices of the employer; (3) the practices of the industry in which the employee is engaged; (4) actions or communications by the employer reflecting assurances of continued employment; and (5) the employee's longevity of service. Schneider, 938 F.2d at 990; Foley, 47 Ca.3d at 677; Eisenberg, 74 Cal. App. 4th at 1387. The existence of an implied promise to discharge an employee only for good cause is generally a question of fact for the jury. Eisenberg, 74 Cal. App. 4th at 1386. Nevertheless, where the facts are undisputed, the existence of an implied contract may be resolved as a matter of law. Id.

---

[3] Plaintiff does not expressly make such an argument or cite to any cases in support thereof.

1    As set forth above, the employment application completed and
2 signed by plaintiff expressly provided that he was an at-will
3 employee who could be terminated with or without cause.
4 Moreover, plaintiff fails to point to any personnel practices or
5 policies of his employer or of the industry generally regarding
6 terminating employees only for cause.

7    Significantly, plaintiff fails to offer *any evidence* of an
8 *actual* promise that he would be employed for a specific term or
9 as long as he was doing a good job, or that he could only be
10 terminated for good cause.  Rather, plaintiff's sole evidence
11 relating to modification of his employment status is the holding
12 of weekly meetings during which managers informed employees of
13 certain things they could be terminated for.  Plaintiff asserts
14 that it was "understood" that as long as he complied with the
15 rules, he would not be terminated.  However, plaintiff's
16 understanding, absent more, is insufficient to raise a triable
17 issue of fact of an implied contract.  See Eisenberg, 74 Cal.
18 App. 4th at 1389 (holding that summary judgment for the defendant
19 employer was appropriate where the plaintiff employee "*understood*
20 respondents *to imply* he would not be terminated without good
21 cause," but failed to proffer any evidence that anyone told him
22 he would have job security or could only be terminated for good
23 cause) (emphasis in original).  Further, it is undisputed that
24 plaintiff received no explicit oral or written assurances that he
25 could only be terminated for cause and that he could not be fired
26 from Sears for any reason.

27    Finally, while plaintiff's years of employment with
28 defendant may be relevant to the existence of an implied

10

contract, the California Supreme Court has expressly stated that "an employee's *mere* passage of time in the employer's service, even where marked with tangible indicia that the employer approves the employees work, cannot *alone* form an implied-in-fact contract that the employee is no longer at will." Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 341-42 (2000) (emphasis in original).  In this case, (1) the employment application signed by plaintiff expressly provided that plaintiff's employment status was at-will; (2) the Employee Handbook expressly provided that plaintiff's employment status was at will; (3) there is no evidence of a company or industry wide practice that limited termination of employees to just cause; and (4) there was no statement made by any of plaintiff's supervisors or defendant's agents indicating that plaintiff's employment status had changed. Because, when viewed in the totality, the undisputed evidence clearly demonstrates that plaintiff was an at-will employee, defendant's motion for summary judgment regarding plaintiff's claim for breach of contract is GRANTED.[4]

**B.   Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiff also claims that the alleged implied employment contract contained an implied covenant of good faith and fair dealing, which was breached by defendant's discharge of plaintiff without good cause.  Defendant asserts that this claim must fail

---

[4] Because plaintiff could not raise a triable issue of fact regarding the existence of an implied contract, defendant was at liberty to discharge plaintiff for any reason or no reason. Davis, 29 Cal. App. 4th at 369.  Therefore, the court need not reach the issue of whether there was good cause to terminate plaintiff.  Id.

11

1 because there was no implied employment contract that modified
2 plaintiff's at-will employment status.
3 　　　The California Supreme Court has noted that "with regard to
4 an at-will employment relationship, breach of the implied
5 covenant cannot logically be based on a claim that the discharge
6 was made without good cause." Foley, 47 Cal.3d at 699 n.39.  The
7 Foley court noted that to interpret otherwise would transmute all
8 at-will contracts "into contracts requiring good cause for
9 termination and Labor Code section 2922 would be eviscerated."
10 Id.  The Supreme Court reaffirmed this position, stating  that
11 "because the implied covenant protects only the parties' right to
12 receive the benefit of their agreement, and, in an at-will
13 relationship there is no agreement to terminate only for good
14 cause, the implied covenant standing alone cannot be read to
15 impose such a duty."  Guz, 24 Cal. 4th at 350.
16 　　　As set forth above, in this case, the undisputed evidence
17 demonstrates that there was no implied employment contract
18 between plaintiff and defendant and that plaintiff was an at-will
19 employee.  Therefore, plaintiff does not have a claim for breach
20 of the implied covenant of good faith and fair dealing allegedly
21 encompassed within that contract.  As such, defendant's motion
22 for summary judgment regarding plaintiff's claim for breach of
23 the implied covenant of good faith and fair dealing is GRANTED.

**C.   Defamation**

25 　　　Plaintiff further alleges a claim for defamation based upon
26 the statement that he lied on his application for employment.
27 Defendant argues that plaintiff fails to support his claim for
28 defamation because there was no publication, any communications

12

1  regarding plaintiff's termination are privileged, the statement
2  was true, and plaintiff suffered no damages as a result of the
3  alleged defamation.
4      To state a claim for defamation, plaintiff must show the
5  intentional publication of a statement of fact that is false,
6  unprivileged, and has a natural tendency to injure or which
7  causes special damage.  Smith v. Maldonado, 72 Cal. App. 4th 637
8  (1999).  Defamation may be any publication which would

> expose [the] defamed person to hatred, contempt,
> ridicule, or obloquy or cause [the] person to be
> shunned or avoided or injured in his or her occupation,
> or which charge[s] [the] person with [a] crime,
> suggest[s] that [the] person has an infectious or
> loathsome disease or is impotent or unchaste, tend[s]
> to injure [the] person in his or her business or
> profession, or otherwise cause actual damage.

Rothman v. Jackson, 49 Cal. App. 4th 1134, 1140 (1996).
"Publication, which may be written or oral, is defined as a
communication to some third person who understands both the
defamatory meaning of the statement and its application to the
person to whom reference is made."  Ringler Assocs. Inc. v.
Maryland Cas. Co., 80 Cal. App. 4th 1165, 1179 (2000).
Publication to a single individual is sufficient to set forth a
claim for defamation.  Id.

   Generally, when a plaintiff voluntarily discloses the
contents of a libelous communication to others, the originator of
the defamatory statement is not liable for the consequent damage.
McKinney v. County of Santa Clara, 110 Cal. App. 3d 787, 796
(1980).  A defendant may be liable for the foreseeable
republication of a defamatory statement by a plaintiff if
/////

> [1] the person defamed [is] operating under a strong compulsion to republish the defamatory statement; and
> [2] the circumstances which create the strong compulsion are known to the originator of the defamatory statement at the time he communicates it to the person defamed.

Id. at 797-98.  "This exception has been limited to a narrow class of cases, usually where a plaintiff is compelled to republish the statements in aid of disproving them." Live Oak Publ'g Co. v. Cohagan, 234 Cal. App. 3d 1277, 1285 (1991).

In the employment context, a plaintiff may have a strong compulsion to republish wrongful grounds for termination to prospective employers in order to explain away negative inferences that will be learned through investigation of the plaintiff's prior employment. See id.; McKinney, 110 Cal. App. 3d at 797-98.  However, in order for a plaintiff to operate under "strong compulsion" under these circumstances, he must demonstrate that there was a "negative job reference" attributable to defendant that he had to explain. Davis v. Consol. Freightways, 29 Cal. App. 4th 354, 373 (1994).  In Davis, the court granted summary judgment for the defendant employer on the plaintiff employee's claim for defamation arising out of alleged self-publication of false reasons for termination to prospective employers. Id.  It was undisputed that the defendant had a strictly enforced policy against giving out any information to prospective employers about former employees except their dates of employment. Id.  In light of this policy and the lack of any evidence that the defendant had spoken about the incident to anyone outside of management, the Davis court held that plaintiff had not demonstrated that he was compelled to explain

14

the circumstances of his termination to prospective employers. Id. Accordingly, the court held that the plaintiff failed to sufficiently support the publication element of his defamation claim.

In this case, it is undisputed that (1) plaintiff has no evidence that anyone from Sears ever spoke to someone outside of Sears about the reasons for plaintiff's termination; (2) plaintiff was not terminated in front of any other employees; (3) plaintiff is unaware of Heising publishing the reasons for his termination; and (4) plaintiff has no evidence that the Separation Form that listed the reason for termination was viewed by anyone outside Sears. (UF ¶¶ 55-61.) Plaintiff's claim is based solely upon his contention that he was strongly compelled to republish the grounds for his termination to prospective employers. However, plaintiff admits that he was aware of Sears' policy to only verify the dates of employment of a former employee and that Sears will not discuss the former employee's performance when called for a job reference. (UF ¶ 79.)[5] As such, there is no evidence that defendant ever gave plaintiff a negative reference or that plaintiff had reason to believe it would do so. While plaintiff may have voluntarily disclosed such information to prospective employers, there is no evidence to raise a triable issue of material fact that he was strongly

---

[5] Plaintiff asserts that this fact is "Disputed. ?" but fails to point to any evidence to support this assertion. (UF ¶ 79.) A review of plaintiff's deposition reveals that he was aware of this policy. To the extent plaintiff asserts that he believes Sears will state whether or not a person is eligible for re-hire if they are asked, (Decl. of Terry Michael Coats, filed Nov. 3, 2008, ¶ 37), plaintiff provides no basis for this belief.

15

compelled to republish any defamatory matter. See Davis, 29 Cal. App. 4th at 373; see also Anthoine v. North Cent. Counties Consortium, 571 F. Supp. 2d 1173, 1194 (E.D. Cal. 2008) (granting the defendant's motion for summary judgment on the plaintiff's defamation claim because the plaintiff failed to show that the defendant ever gave him a negative job reference or that the plaintiff had reason to believe it would do so).  Therefore, because plaintiff fails to satisfy the publication element of a defamation claim, defendant's motion for summary judgment regarding plaintiff's claim for defamation is GRANTED.[6]

**D.   Wrongful Termination in Violation of Public Policy**

Plaintiff claims that he was wrongfully terminated in violation of public policy.  While plaintiff's complaint is vague as to the specific public policy he alleges was violated, he clarifies in his opposition that "[t]he violation of public policy was the defamation regarding his lying on his application."  (Pl.'s Opp'n to Def.'s Mot. for Summ. J., filed Nov. 3, 2008, at 20.)  Specifically, plaintiff contends that defendant falsely accused him of lying on his application and he was compelled to tell prospective employers the grounds for his termination.

An employer's discharge of an employee in violation of a fundamental public policy embodied in a constitutional or statutory provision can give rise to a tort action.  Barton v. New United Motor Manufacturing, Inc., 43 Cal. App. 4th 1200, 1205

---

[6] Because the court concludes that plaintiff has not provided evidence sufficient to raise a triable issue of fact regarding publication, the court does not reach the merits of defendant's remaining arguments.

16

1  (1996).  In order to sustain a claim of wrongful termination in
2  violation of public policy, a plaintiff must prove that his
3  dismissal violated a policy that is fundamental, beneficial for
4  the public, and embodied in a statute or constitutional
5  provision.  Turner v. Anheuser-Busch, Inc. 7 Cal.4th 1238, 1256
6  (1994) (citing Gantt v. Sentry Insurance, 1 Cal.4th 1083, 1095
7  (1992)).

8     Plaintiff fails to cite any case law in support of his
9  assertion that his claim for defamation also gives rise to a
10 claim for wrongful termination in violation of public policy.
11 Moreover, to the extent that such a claim exists, as set forth
12 above, plaintiff has failed to present sufficient evidence to
13 support his claim for defamation.  Therefore, defendant's motion
14 for summary judgment on plaintiff's claim for wrongful
15 termination in violation of public policy is GRANTED.

**E.   Negligent and Intentional Infliction of Emotional Distress**

17     Finally, plaintiff alleges claims for negligent infliction
18 of emotional distress ("NIED") and intentional infliction of
19 emotional distress ("IIED").  Defendant argues that these claims
20 must be dismissed because they are preempted by California's
21 Workers' Compensation Act (the "CWCA").

22     The CWCA provides the exclusive remedy for injuries
23 sustained under the normal conditions of employment.  Cal. Lab.
24 Code § 3601.  Where an employee falls within the protection of
25 the Workers' Compensation scheme, as laid out in Labor Code §
26 3600, the code precludes a cause of action against the employer.
27 Id.  This prohibition extends to emotional injuries such as
28 intentional infliction of emotional distress and negligent

infliction of emotional distress. <u>Cole v. Fair Oaks Fire Protection District</u>, 43 Cal. 3d 148, 160 (1987).

The California Supreme Court has warned that exceptions to the exclusive remedy provision must be applied narrowly; to do otherwise risks undermining the legislative compromise of the CWCA by permitting the employee to pursue a cause of action merely by tailoring the claim to fall within the scope of the exception. <u>Id.</u> The exclusive remedy provision applies so long as the basic conditions of § 3600 are met and the employer's conduct does not contravene fundamental public policy or exceed the risks inherent in the employment relationship. <u>Livitsanos v. Superior Court</u>, 2 Cal. 4th 744, 754 (1992). As such, "a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices."[7] <u>Accardi v. Superior Court</u>, 17 Cal. App. 4th 341, 352 (1993) (holding that claim for intentional infliction of emotional distress against employer based on alleged harassment was not barred by the exclusivity rule because sexual harassment was "outside the normal employment environment"). However, where the conduct complained of is a normal part of the employment relationship, such as an adverse personnel decision or criticism of an employee's performance, then a disability or injury arising from that conduct remains within the exclusive jurisdiction of the CWCA. Cal. Lab. Code § 3601; <u>Cole v. Fair Oaks Fire Protection District</u>, 43 Cal.3d 148, 160-61 (1987) ("In order to properly

---

[7] Plaintiff neither argues nor presents evidence of discriminatory conduct by defendant.

18

manage its business, every employer must on occasion review, criticize, demote, transfer, and discipline employees. . . . [I]t would be unusual for an employee *not* to suffer emotional distress as a result of an unfavorable decision by his employer.") (emphasis in original).

Plaintiff argues that his claims for emotional distress are not precluded by the CWCA because "[t]he defamatory statement that he was terminated for lying on his application is outside the employment compensation bargain." Based upon this assertion, it appears that plaintiff's NIED and IIED claims are based upon his defamation claim. However, as set forth above, plaintiff has failed to present sufficient evidence to support this claim. There is no evidence that defendant published any alleged false statements or compelled plaintiff to republish such statements to prospective employers. Cf. Kelly v. Gen. Tel. Co., 136 Cal. App. 3d 278, (holding that there was a sufficient factual basis for an emotional distress claims where the complaint alleged that defendant had deliberately and falsely accused the plaintiff of misusing funds and falsifying invoices to numerous employees).

To the extent plaintiff's claims for emotional damages are based upon his assertion that he was terminated without good cause because he did not lie on his application, such claims are not predicated on conduct that exceed the risks inherent in the employment relationship. See Cole, 43 Cal.3d at 160-61; see also Shoemaker v. Myers, 52 Cal. 3d 1, 25 (1990) (holding that the plaintiff's IIED claim arising out of alleged wrongful termination in retaliation for whistle blowing was preempted by the CWCA); Davaris v. Cubaleski, 12 Cal. App. 4th 1583, 1586-88

19

(1993) (holding that the plaintiff's NIED and IIED claims arising out of allegations of a series of threats, false representations, and slanderous statements that resulted in termination were preempted by the CWCA).  Therefore, defendant's motion for summary judgment on plaintiff's claims for NIED and IIED is GRANTED.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: November 10, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE